IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
ALBUQUERQUE DIVISION

**DILLARD STORE SERVICES, INC.,**

    *Plaintiff*,

v.                                                Civil Action No. 1:22-cv-921

**WINROCK PARTNERS LLC**
**and INTEGRATED PROPERTY**
**SERVICES COMPANY d/b/a**
**GOODMAN REALTY GROUP,**

    *Defendants*.

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW Plaintiff Dillard Store Services, Inc. ("Dillard" or "Plaintiff"), and files this Original Complaint against Defendants Winrock Partners LLC ("Winrock") and Integrated Property Services Company d/b/a Goodman Realty Group ("Goodman") (collectively, "Defendants") and respectfully states as follows:

### NATURE OF THE CASE

1. This action involves the breaches of contract and tortious actions on the part of Defendants, who are Dillard's landlord and property management company for its two stores at Winrock Town Center in Albuquerque, New Mexico.

2. For the past two decades, Dillard has leased a men's and women's store at Winrock Town Center. Dillard leased the stores expecting that the needs of its customers and employees would be satisfied by offering them attractive and functional retail spaces, convenient and ample parking, and unencumbered access to its stores. In 2007, Defendants acquired Winrock Center and initiated a gradual redevelopment. Winrock Center, the first covered mall in New Mexico, was to

become Winrock Town Center, an open-air, mixed-used concept—but this redevelopment has wrongfully come at Dillard's expense.

3. Winrock has breached its lease with Dillard, having changed the configuration of Winrock Town Center without Dillard's consent. In summer 2022, Defendants undertook a construction project that caused Dillard's store entrances and parking fields to be obstructed. The demolition of areas outside of and around Dillard's stores has left its retail spaces in disarray. Just as the construction project was slated to come to an end, Defendants extended the timeline, reneging on its promise to end the construction that has negatively impacted Dillard.

## THE PARTIES

4. Plaintiff Dillard Store Services, Inc. is incorporated in Arizona with its principal place of business at 1600 Cantrell Road, Little Rock, Arkansas 77201.

5. Defendant Winrock Partners LLC is a limited liability company organized in Delaware with its principal place of business at 100 Sun Avenue Northeast, Suite 210, Albuquerque, New Mexico 87109. It may be served with process through its registered agent, Gary Goodman, at 100 Sun Avenue Northeast, Suite 210, Albuquerque, New Mexico 87109.

6. Upon information and belief, the two members of Defendant Winrock Partners LLC are Mike Kelly and Gary Goodman, each of whom reside in New Mexico.

7. Defendant Integrated Property Services Company d/b/a Goodman Realty Group is incorporated in New Mexico with its principal place of business at 100 Sun Avenue Northeast, Suite 210, Albuquerque, New Mexico 87109. It may be served with process through its registered agent, Gary Goodman, at 100 Sun Avenue Northeast, Suite 210, Albuquerque, New Mexico 87109.

**JURISDICTION AND VENUE**

8. The Court has jurisdiction over the lawsuit under 28 U.S.C. § 1332(a)(1), because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest and costs.

9. Venue is proper in New Mexico under 28 U.S.C. § 1391(b)(1), because Defendants reside in this District. Venue is also proper under 28 U.S.C. 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this District and the property at issue is situated in this District.

**FACTUAL BACKGROUND**

10. Dillard is known for its department stores, which provide services and value to its customers by focusing on exceptional customer care. As part of its commitment to customer care, Dillard requires that each of its stores be convenient and easily accessible to both its customers and employees.

11. On December 15, 1992, Dillard entered into a lease agreement at Winrock Center in Albuquerque, New Mexico. *See* Exhibit **A**, Lease Agreement, Exhibits, and Amendments ("Lease"). At the time, Winrock Center was configured as an enclosed mall. Dillard leased two separate retail spaces—a men's store and a women's store—anchoring itself as a "double header operation" at the mall. The map and photograph depict Dillard's original retail spaces:

 

Plaintiff's Original Complaint - Page 3 of 15

12. In 2007, Defendants acquired and started redeveloping the mall into Winrock Town Center. Winrock leased the retail spaces to Dillard, and Goodman managed Dillard's lease of the retail spaces. For inexplicable reasons, the protracted and prolonged redevelopment and resulting demolition and construction have caused constant disruptions and an unattractive premises, significantly reducing Dillard's profits.

**A.   Lease Provisions**

13. Winrock failed to comply with certain conditions and standards for how it should maintain the areas outside of and around Dillard's retail spaces and parking fields. The Lease mandates that Winrock "shall continuously operate and maintain the Entire Premises as an attractive shopping area substantially in accordance with the standards set forth in Exhibit G . . . ." Ex. A § 14.03 (operating covenant) (emphasis in original). Exhibit G of the Lease denotes the maintenance standards for the common areas, which include those areas designed for common use, such as parking fields, roadways, and walkways. *See id*. § I(d), Ex. G.

14. The Lease grants an "easement, right and privilege for" Dillard and its employees and customers to use the common areas. *See* Ex. A p. 2(a) (words of agreement).

15. The Lease requires that Winrock not obstruct any of the common areas without Dillard's prior written consent. *See* Ex. A, Ex. G § I(a). "[T]he parking area, sidewalks, aisles, malls, streets and driveways . . . [must] not be fenced or otherwise obstructed and [must be] kept open at all times for the unrestricted use of Shopping Center patrons." Ex. A §10.01(f), Ex. G § I(a). In other words, Winrock must maintain the common areas "in good order and repair and in a safe, clean, sightly and sanitary condition . . . ." *Id*. § 10.01(e). Winrock must also provide a specified ratio of parking spaces per retail space area. *Id*. § 10.01(b), Ex. G § I(b)(vi).

16. The Lease additionally directs Winrock to maintain all exterior facades and store entrances of Dillard's retail spaces in "good, safe and tenantable condition . . . ." Ex. A § 6.01. Winrock must restore and repair damage to the retail spaces, including any exterior facades and store entrances, and the common areas. *Id*. § 13.01.

17. Likewise, Winrock failed to abide by the requirements to change the configuration of the site plan. The Lease prohibits Winrock from modifying Dillard's parking fields without written consent. *See* Ex. A § 16.02 (covenant and warranty), Ex. G § I(b)(vi). The site plan was important to Dillard and a primary inducement for it to enter into the Lease. *Id*. § 16.02. Any "change in any respect whatsoever . . . shall be deemed material, actionable and a default . . . ." *Id*.

18. Under the Lease, Winrock leases the retail spaces to Dillard in exchange for Dillard's monthly payment of rent and common area maintenance fees. Along with other damages, the Lease permits Dillard to abate its monthly payments until Winrock repairs and restores the common areas and retail spaces, including any exterior facades and store entrances. *See* Ex. A §§ 10.01, 10.02(b), 13.02, Ex. G § II(a). Finally, the Lease holds Winrock accountable for damages sustained by Dillard. *See, e.g.,* Ex. A §§ 6.02, 10.01(b), 13.01, 15.04, 17.17(b).

**B.   Demolition of Winrock Town Center**

19. In around September 2016, Defendants undertook an unapproved demolition of a portion of Winrock Town Center, wrongfully changing the configuration of the site plan. Dillard's men's and women's stores were to be transformed into fully functional, standalone retail spaces surrounded by other tenants. The map and photograph depict Dillard's current retail spaces:

 

Plaintiff's Original Complaint - Page 5 of 15

20. On September 13, 2016, Dillard demanded that, pursuant to the Lease's ban on unilateral changes to the configuration of the site plan, Defendant cease and desist the demolition. Defendants had neither notified Dillard of the demolition nor obtained Dillard's consent or agreement.

21. On September 23, 2016, Defendants acquiesced and agreed to stop the demolition.

22. Nevertheless, from around September to October 2019, Defendants continued with the demolition without having notified or obtained approval from or an agreement with Dillard.

23. As a result of the demolition undertaken to detach the stores, several of the exterior facades and entrances at both stores were closed or left unfinished. Defendants have yet to repair and restore the south exterior facades and store entrances, which were formerly entrances to the enclosed mall.

24. Due to the complete closure of Dillard's women's store's south entrance, the cosmetics department has been effectively repositioned to the back of the store. The cosmetics department, an important profit-generating section of the store, no longer benefits from the heavy foot traffic associated with being near the women's store's south entrance, the main store entrance.

C. **Phase I Construction of Winrock Town Center**

25. In around May 2022, Defendants informed Dillard about the construction of Road E and the parking fields that would affect its men's and women's stores ("Phase I construction"). Phase I construction began around June 2022. The map depicts the Phase I construction outside of and around Dillard's stores:



26. Dillard experienced three major issues once Phase I construction began. First, the construction blocked several store entrances, including the south entrances to both stores. Dillard's customer and employee access to its stores has been impeded by the construction.

27. One illustration of the challenges Dillard has faced with the construction outside of and around its stores is the construction fencing blocking an entrance to its women's store:



28. Second, the construction has severely interfered with Dillard's customer and employee access to its parking fields. They have not had access to ample convenient and practical parking areas and spaces.

29. The construction has also created a safety hazard as vehicle traffic is routed through Dillard's parking fields. Customers and employees have been forced to not only park further away from Dillard's stores but also to walk through a construction zone while evading vehicle traffic.

30. The photographs depict the hazardous and chaotic conditions faced by Dillard and its employees and customers in its parking fields:

 

Plaintiff's Original Complaint - Page 7 of 15

31. Ahead of the 2022 winter holiday season, Defendants attempted to appease Dillard with a "Holiday Parking Plan," where a shuttle service would transport Dillard's customers and employees from the parking fields to the women's store. But Defendants never even implemented such a basic service.

32. Third, the construction has converted the area surrounding Dillard's retail spaces into an active construction zone, which appears dangerous, unclean, and unsightly. For example, in October 2022, Defendants installed a sewer line outside the women's store's north entrance without first notifying Dillard.

33. Defendants continue to have construction rubble, equipment, and fencing blocking the sidewalks outside of and around the men's and women's stores. The map depicts construction fencing blocking pedestrian walkways and sidewalks as of October 2022:



34. The construction has also affected Dillard's retail operations and customer service. For instance, in October 2022, Dillard's women's store lost connectivity for its internet, telephone, and fire and security alarm systems due to the destruction of telephone and fiber optic cables. This has hampered Dillard's operations and ability to communicate with its customers.

35. Defendants have not obtained consent, approval, or agreement from Dillard for any of the changes to the configuration of the site plan and common area obstructions outside and around the men's and women's stores.

36. On at least three occasions, twice in June 2022 and most recently in October 2022, Dillard notified and warned Defendants that Dillard did not approve of any such changes. Dillard reminded Defendants of the Lease's ban on unilateral changes to the configuration of the site plan, the requirement for written consent to any common area obstructions, and the need to repair and restore the exterior facades and store entrances.

37. Even with Dillard's warnings and reminders, Defendants have continued their wrongdoing and persisted with the unapproved changes that damage Dillard.

38. Then, as of October 19, 2022, Defendants extended the completion date of the Phase I construction by five months. The completion date has now been set for March 2023.

39. Since May 2022, Dillard has been reassured by Defendants that Defendants would complete the Phase I construction within three months, by October 2022:

> 2) <u>Road E and associated parking:</u> Improvements to the internal north/south road west of the Dillard woman's store will take place from June 2022 to October 2022. Direct access to the north and east Dillard woman store will continue as-is throughout construction. Access to the woman's west entrance will be temporarily inaccessible. To limit the duration of inconvenience, Landlord proposes to perform the Road E and parking lot improvements in one phase. Construction will take approximately 3 months. All road work is required by the City of Albuquerque to help provide a safe and navigable road and parking field. Landlord will ensure clear traffic control and directional signage to the north and east entrances of the woman's store are present throughout each phase of construction.

40. Despite Defendants' promise to complete the Phase I construction in October 2022, the construction will now continue during the peak sales time of the 2022 winter holiday season.

41. Dillard has suffered due to the construction and common area deterioration caused by Defendants. Indeed, Dillard has paid for rent and common area fees but has not attained the full benefits of the Lease. Dillard has lost profits due to customers being deterred from shopping at its stores, the lack of attractive retail co-tenants, and the inadequately maintained premises. Based on

the delay in construction, the lost profits will likely escalate during Dillard's all-important and profitable 2022 winter holiday season.

## COUNT I – BREACH OF CONTRACT AGAINST WINROCK

42. Plaintiff hereby incorporates all prior paragraphs of this Complaint as if fully set forth herein.

43. On December 15, 1992, Dillard and Winrock executed a valid and enforceable written contract, the Lease. *See* Ex. A. Dillard is a signatory to the Lease and therefore, is a proper party to bring suit for a breach of the contract. Dillard is a reliable tenant and has performed any and all of its contractual obligations.

44. Winrock has failed to abide by and perform under the agreement, provisions, terms, and covenants of the Lease. These failures include but are not limited to the following:

   a. Winrock has unilaterally changed the configuration of the site plan. *See* Ex. A, § 16.02;

   b. Winrock has not maintained an attractive shopping area in accordance with the common area maintenance standards. *Id*. § 14.03;

   c. Winrock has not provided Dillard with a suitable easement, right and privilege to the common areas. *Id*. p.2(a);

   d. Winrock has wrongfully obstructed the common areas by fencing and tampering with Dillard's parking fields, sidewalks, and streets. *Id*. § 10.01(f), Ex. G;

   e. Winrock has wrongfully obstructed Dillard's store entrances with fencing and barricades. *Id*. § 10.01(f), Ex. G;

   f. Winrock has not repaired and restored Dillard's exterior facades and store entrances and the common areas. *Id*. §§ 6.01, 13.01;

    g.    Winrock has wrongfully modified Dillard's parking fields, changing the location and arrangement. *Id*. § 16.02(a), Ex. G;

    h.    Winrock has not provided and maintained the specified ratio of parking spaces per retail space area. *Id.* § 10.01(b), Ex. G; and

    i.    Winrock has not maintained the sidewalks and other common areas in a safe, clean, sightly and sanitary condition. *Id.* § 10.01(e).

45. Winrock has breached the Lease with Dillard. As a result, Dillard has suffered damages, which are the natural, probable, and foreseeable consequences of such breaches. These breaches by Winrock constitute a continuing wrong because the breaches involve continuing and/or repeated injury.

46. Dillard seeks contractual damages, including lost profits, attorney fees, costs, and interest.

## COUNT II – BREACH OF IMPLIED COVENANT OF
## GOOD FAITH AND FAIR DEALING AGAINST WINROCK

47. Plaintiff hereby incorporates all prior paragraphs of this Complaint as if fully set forth herein.

48. An implied covenant of good faith and fair dealing attaches to all contracts.

49. Fair dealing means to act honestly and in good faith in performing a contract.

50. On December 15, 1992, Dillard and Winrock executed a valid and enforceable written contract, the Lease. *See* Ex. A.

51. Pursuant to the Lease, Winrock agreed to not unilaterally change the configuration of the site plan, to provide an attractive shopping area, to not obstruct the common areas, to not change the location and/or arrangement of Dillard's parking fields, to provide a specific parking

ratio, to repair and restore the exterior facades and store entrances, and to maintain the common areas in good condition. Ex. A §§ 10.01, 14.03, 16.02, Ex. G.

52. Winrock has acted in bad faith and without honesty and fair play. Winrock has unfairly interfered with Dillard's rights to receive the benefits of the Lease.

53. Winrock has breached the covenant of good faith and fair dealing. These breaches by Winrock constitute a continuing wrong because the breaches involve continuing and/or repeated injury.

54. As a result, Dillard was damaged, and Dillard seeks damages from the breach, including lost profits, attorney fees, costs, and interest.

**COUNT III – VIOLATON OF THE NEW MEXICO UNFAIR PRACTICES ACT AGAINST WINROCK AND GOODMAN**

55. Plaintiff hereby incorporates all prior paragraphs of this Complaint as if fully set forth herein.

56. Defendants qualify as "persons" under the New Mexico Unfair Practices Act.

57. Defendants engaged in trade or commerce by providing and managing the lease for Dillard's retail spaces.

58. Defendants' unfair and deceptive trade practices occurred in their regular course of trade or commerce. They were made while Dillard leased its retail spaces at Winrock Town Center from Defendants.

59. Defendants engaged in such unfair and deceptive trade practices that include but are not limited to N.M. Stat. Ann. § 57-12-2(D)(5), (14), and (17): representing that goods or services have characteristics, uses, or benefits that they do not have; using exaggeration or ambiguity as to a material fact or failing to state a material fact for deceptive purposes; and failing to deliver the quality of goods or services contracted for.

Plaintiff's Original Complaint - Page 12 of 15

60. Defendants falsely represented that the retail spaces they leased to Dillard would meet the standards for a department store of Dillard's caliber. By paying a monthly common area maintenance fee, Dillard would expect to benefit from the common areas being properly maintained by Defendants.

61. Defendants failed to disclose that Dillard and its employees and customers would have to face an ongoing construction zone. Defendants deceptively engaged with Dillard in providing and managing the Lease and instead prioritized the redevelopment of Winrock Town Center at the expense of Dillard.

62. Defendants unfairly reneged on their promise to end Phase I construction prior to the winter 2022 holiday season. Defendants were deceptive and ambiguous in promising an end to the construction that had been harmful to Dillard. The torts committed constitute a continuous wrong because the tort involves a continuing and repeated injury.

63. Such unfair and deceptive trade practices were knowingly made by Defendants.

64. Defendants' unfair and deceptive trade practices would tend to deceive any person and did indeed deceive Dillard.

65. Defendants' unfair and deceptive trade practices caused damages to Dillard.

66. Dillard seeks statutory damages, including treble damages, attorney fees, costs, and interest.

### COUNT IV– NEGLIGENT MISREPRESENTATION AGAINST WINROCK AND GOODMAN

67. Plaintiff hereby incorporates all prior paragraphs of this Complaint as though stated again herein.

68. Defendants made several material representations to Dillard in the course of leasing to Dillard the retail spaces.

69. The representations were such that the retail spaces leased to Dillard would meet the standards necessary for a department store, that the common area maintenance fee that Dillard paid monthly would be used by Defendants to maintain the common areas; that the retail spaces leased to Dillard would continue to meet such standards even with the redevelopment of Winrock Town Center, and that the Phase I construction would be finished in October 2022.

70. Defendants' representations were false and intended to placate Dillard. Defendant failed to use reasonable care in making their representations. The torts committed constitute a continuous wrong because the tort involves a continuing and repeated injury.

71. Dillard justifiably relied on Defendants' representations to maintain its Lease and for its business operations and strategy.

72. Defendant's negligent misrepresentation proximately caused Dillard's injury. Dillard seeks actual damages, including lost profits, costs, and interest.

## ATTORNEY FEES AND COSTS

73. Dillard requests that the Court award attorney fees and costs incurred in pursuit of this action. *See, e.g.,* Ex. A §§ 6.02, 10.01(b); N.M. Stat. Ann. § 57-12-10 (awarding attorney fees and costs under the New Mexico Unfair Practices Act).

## PRAYER

WHEREFORE, Plaintiff Dillard Store Services, Inc. respectfully prays this Court for relief as follows:

(a) For judgment as against Defendants;

(b) For all available actual, contractual, statutory, and treble damages;

(c) For damages to include those for lost profits;

(d) For pre-and post-judgment interest at the maximum rate permitted by law;

(e)     For costs incurred in pursuit of this action, including attorney fees and costs to the extent permitted by law; and

(f)     For any and all relief for which the Court deems appropriate.

Dated: December 1, 2022

Respectfully submitted

*/s/ Christopher Lindstrom*
Christopher D. Lindstrom
POTTS LAW FIRM, LLP
3737 Buffalo Speedway, Suite 1900
Houston, Texas 77098
Facsimile: (713) 583-5388
Tel: (713) 963-8881
Email: clindstrom@potts-law.com

**ATTORNEY FOR PLAINTIFF**