IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
ALBUQUERQUE DIVISION

**DILLARD STORE SERVICES, INC.,**

    **Plaintiff,**

v.

                                                          Civil Action No. 1:22-cv-921

**WINROCK PARTNERS LLC
and INTEGRATED PROPERTY
SERVICES COMPANY d/b/a
GOODMAN REALTY GROUP,**

    **Defendants.**

### MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANTS' FRCP RULE 12(b)(6) MOTION TO DISMISS PLAINTIFF'S COMPLAINT

    Defendants, Winrock Partners LLC ("Winrock") and Integrated Property Services Company d/b/a Goodman Realty Group ("Goodman") (collectively, "Defendants") respectfully submit the following memorandum of points and authorities in support of their motion, pursuant to FRCP Rule 12(b)(6), to dismiss the Complaint filed against them by Dillard Store Services, Inc. ("Dillard") in its entirety:

**1.**     **SUMMARY OF ARGUMENT**

    As set forth in the very introduction to Dillard's Complaint, this action involves alleged breaches of a written lease and/or the implied covenant of good faith and fair dealing between Dillard and Winrock, as well as various alleged "tortious" conduct by Defendants purportedly directed at Dillard, one of Winrock's tenants within the Winrock Town Center in Albuquerque, New Mexico.  However, the allegations of Dillard's complaint make clear its contract-based claims are time-barred as a matter of law since Winrock's breaches and resulting alleged damages accrued, at the very latest, in September of 2016, more than six years before Dillard filed its Complaint in December of 2022.  As such, its contract-based claims are time-barred as a matter of law and they should be dismissed.

As for Count Three, involving Dillard's alleged Violation of the New Mexico Unfair Practices Act ("NMUPA"), Dillard fails to assert any actionable misrepresentations by Defendants and instead focuses entirely on routine alleged breaches of a lease that Defendants did not sign, but inherited from its predecessor, and without any actual "misrepresentations" that give rise to any "unfair, deceptive, or unconscionable trade practices," as required to assert such a claim. *Western Agricultural Insurance Company v. Legacy Medical Services, LLC*, 2020 WL 4201825, *16 (D.N.M. July 22, 2020.)  As such, Dillard asserts no cognizable conduct that gives rise to a violation of New Mexico's Unfair Practices Act, but instead asserts, at best, a simple alleged but untimely breach of a lease that cannot give rise to a violation of the NMUPA.

Finally, in support of Count Four for "negligent misrepresentation," Dillard asserts nothing more than non-actionable predictions of future events that cannot give rise to a claim for negligent misrepresentation as a matter of law. *State ex rel. State Highway and Transp. Dept. v. Garley*, 111 N.M. 383, 389 (1991) ("A misrepresentation, like a mistake, must be one of fact, in the sense that predictions about the future or promises about the future will not be deemed actionable.")  As such, Dillard's complaint fails to assert a cognizable claim for negligent misrepresentation on either of the grounds asserted in its complaint and it should be dismissed accordingly.

**2.      MATERIAL FACTUAL ALLEGATIONS OF PLAINTIFF'S COMPLAINT**

**2.1      Dillard Alleges Defendants' Breach of the Parties' Lease in September 2016.**

Plaintiff alleges that beginning in 1992, and for the past two decades, it has leased a men's and women's store at Winrock Town Center. (See Complaint, at ¶¶ 2 and 11.)  Plaintiff asserts it originally leased the stores at the Center "expecting that the needs of its customers and employees would be satisfied by offering them attractive and functional retail spaces, convenient and ample parking, and unencumbered access to its stores." (Id. at ¶ 2.)  Plaintiff goes on to allege, at paragraph 2 of its Complaint, as follows:

> In **2007**, Defendants acquired Winrock Center and initiated a gradual redevelopment. Winrock Center, the first covered mall in New Mexico, was to become Winrock Town Center, an open-air, mixed-used concept—but this redevelopment has wrongfully come at Dillard's expense. (***Emphasis** added.*)

At paragraph 3, Dillard alleges that by virtue of Defendants' "gradual redevelopment" of Winrock Town Center beginning in 2007, "Winrock has breached its lease with Dillard, having changed the configuration of Winrock Town Center without Dillard's consent." (Id. at ¶ 3.)

At paragraph 12 of its Complaint, Plaintiff expressly alleges:

> In 2007, Defendants acquired and started redeveloping the mall into Winrock Town Center. Winrock leased the retail spaces to Dillard, and Goodman managed Dillard's lease of the retail spaces. For inexplicable reasons, the protracted and prolonged redevelopment and resulting demolition and construction have caused constant disruptions and an unattractive premises, significantly reducing Dillard's profits.

Notably, the "demolition and construction" on the part of Defendants allegedly caused "constant disruptions and an unattractive premises," thus "significantly reducing Dillard's profits," is alleged to have occurred beginning in 2007. (See Complaint, at ¶ 12.) Thereafter, Dillard alleges that Defendant breached the lease by commencing demolition of a portion of Winrock Town Center, including "changing the configuration of the site plan." (Id. at ¶ 19.) To that end, paragraph 19 goes on to allege as follows:

> In around September 2016, Defendants undertook an unapproved demolition of a portion of Winrock Town Center, wrongfully changing the configuration of the site plan. Dillard's men's and women's stores were to be transformed into fully functional, standalone retail spaces surrounded by other tenants.

In addition, the Complaint makes clear that Dillard seeks damages for Defendants' alleged failure to "continuously operate and maintain the Entire Premises as an attractive shopping area substantially in accordance with the standards set forth in Exhibit G,"[1] something Defendants have not done since acquiring the Center in 2007, as the mall has been all but vacant since Defendants acquired it from their predecessor-in-interest. Notably, Dillard who was already working with Defendants' predecessor-in-interest on an extensive remodel of the Center using a builder selected by Dillard when Defendants acquired the Center in 2007.

In connection with the construction allegedly undertaken by Defendants in breach of Dillard's lease in September of 2016, Dillard alleges that it "demanded that, pursuant to the Lease's ban on unilateral changes to the configuration of the site plan," since "Defendants had

---

[1]  See Complaint, at ¶ 13.

Memorandum of Points & Authorities in Support of Defendants'
FRCP Rule 12(b)(6) Motion to Dismiss Plaintiff's Complaint - Page 3

neither notified Dillard of the demolition nor obtained [Plaintiff's] consent or agreement." (Id. at ¶ 20.)  Thus, Dillard alleges, Defendants' construction activity in September of 2016 breached the lease, since Dillard alleges Defendants undertook the construction without Dillard's required consent, thus changing the configuration of the mall without Dillard's consent back then. (Id. at ¶ 21.)  And, although Dillard alleges Defendants temporarily stopped the demolition, it also alleges Defendants "continued with the demolition without having notified or obtained approval from or an agreement with Dillard." (Id. at ¶ 22.)

Dillard expressly alleges that, as a result of the demolition undertaken by Defendants beginning in September of 2016, "several of the exterior facades and entrances at both stores were closed or left unfinished." (Id. at ¶ 23.)  As such, its claimed damage started then.  Indeed, Dillard goes on to allege, "Defendants have yet to repair and restore the south exterior facades and store entrances, which were formerly entrances to the enclosed mall." (Ibid.)  Although Dillard also alleges later construction work was undertaken in 2022 (in some cases to purportedly remedy some of the damages caused to Dillard), the Complaint makes clear that, according to Dillard, the damage was done in 2016, when Dillard alleges that "Defendants have not obtained consent, approval, or agreement from [Plaintiff] *for any of the changes to the configuration of the site plan and common area obstructions outside and around the men's and women's stores*." (Id. at ¶ 35 [*emphasis* added].)

In support of Count One of its Complaint for breach of contract, Plaintiff realleges the same alleged breaches set forth above; each of which stem from Defendants' alleged unapproved changes to the configuration of the Center, which occurred in September of 2016. (See Complaint, at ¶ 44.)  Plaintiff identifies the same breaches in support of its Second Count for breach of the implied covenant of good faith and fair dealing. (See Paragraph 50.)

**2.2    Plaintiff's Count Three for Violation of the NMUPA.**

In support of Count Three, for violation of the New Mexico Unfair Practices Act, Dillard Complaint points to Defendants' purported "representations" within a lease that neither Defendant ever signed.  But, the NMUPA was intended to apply only to "unfair, deceptive, or unconscionable trade practices," and not routine alleged breaches of contracts. *Western*

*Agricultural Insurance Company v. Legacy Medical Services, LLC*, 2020 WL 4201825, * 16 (D.N.M. July 22, 2020.)  As such, Dillard's Complaint fails to adequately allege a claim for violation of the NMUPA because Defendants made none of the representations in the lease.  As a result, Dillard's claim for violation of the NMUPA since Defendants engaged in no "unfair, deceptive or unconscionable trade practices" as a matter of law, and Dillard has identified none.

### 2.3 Dillard's Fourth Count for Negligent Misrepresentation Alleges Purely Predictions of Future Events, Which Are Not Actionable.

Finally, in support of Count Four, for "negligent misrepresentation," Dillard alleges only alleged predictions about future events that cannot give rise to liability for a misrepresentation, whether intentional or negligent. *State ex rel. State Highway and Transp. Dept. v. Garley*, 111 N.M. 383, 389 (Sup.Ct. 1991) ("A misrepresentation, like a mistake, must be one of fact, in the sense that predictions about the future or promises about the future will not be deemed actionable.")  In addition, Dillard points to "several material representations to Dillard in the course of leasing to Dillard the retail spaces," but neither Defendant signed the lease in question and, as such, neither made any representations to Plaintiff about the lease signed in 1992 by Defendants' predecessor-in-interest.   As non-signatories to the lease drafted in 1992, Defendants cannot be held liable for "misrepresentations" made within a lease neither Defendants signed.

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's Complaint pursuant to FRCP Rule 12(b)(6) should be granted in its entirety.

### 3. LEGAL AUTHORITY AND STANDARD APPLICABLE TO THIS MOTION

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for failure to state a claim upon which the court can grant relief.  For purposes of such a motion, the court must accept as true all well-plead factual allegations in the complaint and must view them in the light most favorable to the nonmoving party. *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

Here, Dillard has asserted jurisdiction before this court by virtue of diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1). (See Complaint, at ¶ 8.)  As such, the law of the state of New Mexico apply for purposes of the claims asserted by Plaintiff. *Guaranty Trust Co.*

*v. York* (1945) 326 U.S. 99, 103-104.  And, although the statute of limitations is an affirmative defense, it may be resolved by way of a FRCP Rule 12(b)(6) motion to dismiss where, as here, the dates set forth in the complaint make clear that the right sued upon has been extinguished by the state of limitations.  *Torrez v. Eley*, 378 Fed.Appx. 770, 772 (10th Cir. 2010) (quoting *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041, n.4 (10th Cir. 1980).)

"When a party has asserted a statute of limitations issue in a rule 12(b)(6) motion, a court accepts all well-pled factual allegations in the complaint as true and views them in the light most favorable to the plaintiff to determine whether the statute of limitations has run." *Anderson Living Trust v. WPX Energy Prod., LLC*, 27 F.Supp.3d 1188, 1213 (D.N.M. 2014).  Here, the allegations of Dillard's complaint makes clear Defendants dismissed the complaint, at the latest, in September of 2016, more than six years prior before Dillard filed its complaint.  As such, its contract-based claims are time-barred as a matter of law.  Moreover, as for Dillard's NMUPA, Dillard fails to identify any actionable misrepresentations by Defendants and instead focuses on alleged "breaches" of a lease Defendants did not even sign, but which they inherited in 2007.  And, as for Dillard's claim for "negligent misrepresentation," Dillard alleges nothing more than non-actionable predictions of future fact, ***not*** actionable misrepresentations of a false fact.  As such, Dillard's Complaint should be dismissed in its entirety.

4. **LEGAL ARGUMENT**

    4.1    **Plaintiff's First and Second Contact Claims Are Time-Barred.**

Under New Mexico law, "[t]he elements of a breach-of-contract action are the existence of a contract, breach of the contract, causation, and damages." *Abreu v. N.M. Children, Youth and Families Dep't*, 797 F.Supp.2d 1199, 1247 (D.N.M. 2011).  In New Mexico, there is a six-year limitations period for breach of contract and breach of implied covenant claims and New Mexico applies the "discovery rule," which means that the statute of limitations period "begins to run when the claimant has knowledge of sufficient facts to constitute a cause of action." *Gerke v. Romero*, 148 N.M. 367, 371 (Ct.App.2010).  "The discovery rule provides that 'the cause of action accrues when the plaintiff discovers or with reasonable diligence should have discovered that a claim exists.'" *Williams v. Stewart*, 137 N.M. 420, 424 (Ct.App.2005).  "Under the

discovery rule, the statute of limitations begins to run when the plaintiff knows or, with reasonable diligence should know, of his injury and its cause." *Gerke*, *supra*, 148 N.M. at 371.

Here, Dillard openly alleges that its damages arose from a "gradual redevelopment" of Winrock Center beginning in *2007*, at which time Defendants began transforming the mall from an enclosed large mall to "an open-air, mixed-use concept." (See Complaint at ¶ 2.)  To that end, the Complaint alleges that Winrock breached the lease with Dillard by "having changed the configuration of Winrock Town Center without Dillard's consent." (See Complaint, at ¶¶ 2-3.) That redevelopment and change of configuration, of course, included the demolition of multiple buildings and attached structures that formerly existed between Dillard's two stores.

Dillard alleges the demolition occurred, at the latest, in September of 2016, more than six years before Dillard filed its Complaint.  Indeed, Dillard puts that work "in around September 2016," when "Defendants undertook an unapproved demolition of a portion of Winrock Town Center, wrongfully changing the configuration of the site plan." (See Complaint, at ¶ 19.)  As such, assuming Defendants breached the lease, as Dillard alleges, the lease was breached in September of 2016, when Dillard claims Winrock breached the lease by demolishing structures within the mall and "reconfiguring the Center" without Dillard's consent.  As for *later* work by Winrock, the work consisted of furthering its changes to the configuration of the Center consistent with the changes Dillard alleges Defendants began implementing beginning in 2007, through their "gradual" remodeling of a mall that was all but vacant as of 2007.  As such, any claims for breach of the parties' lease, or breach of the implied covenant of good faith and fair dealing accrued in September of 2016, at the latest, rendering Dillard's contract-based claims time-barred as a matter of law.  As such, its First and Second Count should be dismissed.

### 4.2 Plaintiff's Third Count For Violation of the NMUPA Fails to Allege Actionable Misrepresentations Beyond a Lease Defendants Did Not Sign.

With respect to Dillard's third count for alleged violations of the NMUPA,  the gravamen of an unfair trade practice is a misleading, false, or deceptive statement made knowingly in connection with the sale of goods or services." *Diversey Corp. v. Chem–Source Corp.*, 125 N.M. 748, 754 (Ct.App. 1998).  In order to state a claim under the UPA, a complaint must contain

allegations to the effect that: (1) the defendant made an oral or written statement, a visual description or a representation of any kind that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale, lease, rental, or loan of goods or services in the regular course of the defendant's business; and (3) the representation was of the type that may, tends to, or does deceive or mislead any person. *Stevenson v. Louis Dreyfus Corp.*, 112 N.M. 97, 100 (1991).

Here, Defendants made ***none*** of the representations of the lease; they merely inherited a lease from its predecessor-in-interest. Yet, Dillard specifically points at the lease language as the basis of Defendants' alleged misrepresentations. (See, e.g., Complaint, at ¶ 59 "Defendants engaged in such unfair and deceptive trade practices that include" "representing that goods or services have characteristics, uses, or benefits that they do not have, using, or benefits that they do not have; using exaggeration or ambiguity as to a material fact or failing to state a material fact for deceptive purposes; and failing to deliver the quality of goods services contracted for.") Dillard specifically alleges that Dillard "falsely represented that the retail spaces they leased to Dillard would meet the standards for a department store of Dillard's caliber," and that by "paying a monthly common area maintenance fee, Dillard would expect to benefit from the common areas being properly maintained by Defendants." (Id. at ¶ 60.)

Yet, these allegations identify nothing more than language within a lease that Defendants did not even sign. But the NMUPA was intended to apply to "unfair, deceptive, or unconscionable trade practices," not routine alleged breaches of contracts, much less alleged breaches of a contract that Defendants did not even sign. *Western Agricultural Insurance Company v. Legacy Medical Services, LLC*, 2020 WL 4201825, *16 (D.N.M. July 22, 2020; *Stevenson*, *supra*, 112 N.M. at 99-100.) Since Defendants made none of the "representations" within the lease that Defendants' predecessor-in-interest, but not Defendants signed, Dillard's complaint fails to sufficiently allege a violation of the NMUPA and it should be dismissed.

### 4.3 Dillard Fails to Allege Actionable Negligent Misrepresentation Since it Identifies Only Time-Barred Representations in a Lease Defendants Did Not Sign Or Non-Actionable Predictions About Future Events.

Paragraph 68 of Dillard's Complaint alleges that "Defendants made several material misrepresentations to Dillard in the course of leasing to Dillard the retail spaces." (See Complaint, at ¶ 68.)  But the lease at issue was executed in 1992 by Winrock's predecessor-in-interest, not by Defendants, and Defendants made none of the representations contained within the lease, since Defendants did not sign it at all, much less in 1992.

Paragraph 69 then goes on to allege other provisions within the lease that Defendants did not even sign, and which cannot possibly form the basis of an actionable misrepresentation by Defendants since the lease was signed in 1992, not by Defendants, but by Winrock's predecessor.  As such, Dillard's alleged "representations" made not by Defendants within a lease it did not sign, but by Winrock's predecessor-in-interest in 1992, cannot give rise to an actionable misrepresentation claim by either Defendant as to any of the "misrepresentations" made within the "course of leasing to Dillard the retail spaces."

As for the only misrepresentation actually alleged to have been made by Defendants – to the effect that "the Phase I construction would be finished in October of 2022" – it is well settled law in New Mexico that a misrepresentation about the future or promises about the future are not actionable. *State ex rel. State Highway and Transp. Dept. v. Garley*, 111 N.M. 383, 389 (Sup.Ct. 1991).   Here, that is all Dillard has alleged, other than mere representations within the lease itself, which Defendants did not even sign.  As such, Defendants cannot be held liable for incorrectly predicted how long the construction would take, as that is a prediction about a future fact and cannot give rise to an actionable misrepresentation under New Mexico law.

5.   **CONCLUSION**

Based on the foregoing, Defendants respectfully submit Dillard's contract-based claims are time-barred as a matter of law, that its NMUPA claim fails to identify any actionable misrepresentation by Defendants beyond a lease they did not sign, and that Dillard's negligent misrepresentation claim alleges purely non-actionable predictions about the future that are simply not actionable.  As such, Defendants' 12(b)(6) motion should be granted as to each of Dillard's defective claims.

Dated:  March 13, 2023

Respectfully submitted,

 /s/ Michael W. Vivoli
Michael W. Vivoli
VIVOLI SACCUZZO, LLP
3104 Fourth Avenue
San Diego, CA  92103
Email: mvivoli@vivolilaw.com
Telephone: (619) 744-9992
Facsimile:  (619) 744-9994
Attorney for Defendants,
Winrock Partners LLC and Integrated Property Services Company d/b/a Goodman Realty Group

WALKER & ASSOCIATES, P.C.
By: /s/ filed electronically
Thomas D. Walker
Chris W. Pierce
500 Marquette N.W., Suite 650
Albuquerque, New Mexico 87102
(505) 766-9272
(505) 766-9287 (fax)
twalker@walkerlawpc.com
cpierce@walkerlawpc.com

*Local Counsel for Defendants Winrock Partners, LLC and Integrated Property Services Company d/b/a Goodman Realty Group*

## Certificate of Service

      I, Chris W. Pierce, hereby certify that on March 13, 2023, a true copy of the foregoing was served via the Court's CM/ECF notification facilities to those parties who are registered CM/ECF participants in this case.

*/s/ Chris W. Pierce*
Chris W. Pierce