**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**DILLARD STORE SERVICES, INC.,**

       **Plaintiff,**

                                **Civil Action No. 1:22-cv-921-DHU-JFR**

**v.**

**WINROCK PARTNERS LLC
and INTEGRATED PROPERTY
SERVICES COMPANY d/b/a
GOODMAN REALTY GROUP,**

       **Defendants.**

## COUNTERCLAIMANT'S OPPOSITION TO DILLARD STORE SERVICES, INC.'S RULE 12(b)(6 MOTION TO DISMISS THEIR COUNTERLCAIM

Defendants/Counterclaimants, Winrock Partners LLC ("Winrock") and Integrated Property Services Company d/b/a Goodman Realty Group ("Goodman") (collectively, "Counterclaimants") respectfully submit the following opposition to the motion by Dillard Store Services, Inc. ("Dillard") to dismiss their Counterclaim:

**1.**     **SUMMARY OF RESPONSE**

In seeking to dismiss the Counterclaim, Dillard contends virtually all of the counterclaims for relief asserted within it "do not contain sufficient factual content to state a claim for relief that is plausible on its face" and that two damage claims – for punitive damages and treble damages – are "prohibited by the plain language of the lease agreement" at issue.  As explained below, neither argument holds water, particularly given the vast differences between the facts alleged in the Counterclaim and the pleading at issue in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), upon which Dillard so heavily relies.

As Dillard acknowledges within its motion, FRCP rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." (See Dillard's motion, at page 2 [citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009).)  Counterclaimants' counterclaim provides just that, and with direct reference to the very same contract that is alleged

to underlie Dillard's own claims against Counterclaimants.  Indeed, with reference to the very same contract that Dillard contends give rise to its claims, Counterclaimants have sufficiently plead each of the claims asserted in the Counterclaim, and have done so not merely through "legal conclusions," but through factual allegations that are in harmony with the written word of the parties' contract.  As for Counterclaimants' asserted tort claims, each specifically alleges the facts giving rise to Dillard's liability and each claim is perfectly consistent with the law that applies to each claim and Counterclaimants' challenged punitive and treble damages are only alleged in connection with tort claims to which the contractual provision upon which Dillard relies simply does not apply.  For these reasons, Dillard's motion should be denied in its entirety.

In the unlikely event the Court concludes Dillard's motion is well taken as to either or any of the claims against which it is directed, as Dillard concedes in its motion, even where a court determines a pleading is deficient in any respect, the Court generally should provide the pleader at least one opportunity to amend the complaint before dismissing it with prejudice. Doc. No. 24-1, at p. 4, fn. 1 [citations omitted].  There is certainly no reason to depart from that standard here; particularly given Dillard's own attempt to seeks a Mulligan only after its own claims were shown to be facially barred by the applicable statutes of limitation.  Accordingly, and even if the Court were to grant Dillard's motion, the Court should permit Counterclaimants leave to amend, at least once.

2.    **<u>LEGAL STANDARD APPLICABLE TO MOTION</u>**

At the motion-to-dismiss stage, the court does not weigh the evidence, and instead is interested only in whether it has jurisdiction and whether the plaintiff pleads a claim to relief that is plausible on its face. *Rivero v. Bd. of Regents of Univ. of New Mexico*, No. CIV 16-0318 JB\SCY, 2019 WL 1085179, at *47 (D.N.M. March 7, 2019) [quoting *Begay v. Pub. Serv. Co. of N.M.*, 710 F. Supp. 2d 1161, 1199 (D.N.M. 2010)].  To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Plausibility," in this context, must refer to the scope of the allegations in a complaint and it is only where they are *so* general that they encompass a wide swath of conduct, *much of it innocent*, that the plaintiff

has failed to have "nudged their claims across the line from conceivable to plausible." *Front Row Technologies, LLC v. NBA Media Ventures, LLC*, 163 F.Supp.3d 938, 975 (D.N.M. 2016)[quoting *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)].

Here, none of Dillard's alleged misconduct can fairly be characterized as "innocent," or at all consistent with its contractual obligations, as outlined in the Counterclaim, which incorporates the attached lease (which Counterclaimants inherited and were not permitted to "negotiate" in any respect). Instead, the Counterclaim adequately alleges Dillard's breach of the lease, its breach of the implied covenant of good faith and fair dealing implied within the lease and its interference with Counterclaimants' existing and prospective contracts. Accordingly, and because Counterclaimants have plainly asserted claims plausible on their face, with reference to the parties' agreement and the facts asserted in the Counterclaim, Dillard's motion to dismiss should be denied in its entirety.

4.    **LEGAL ARGUMENT**

   4.1    **The Counterclaim Adequately Alleges Dillard's Breach of Contract.**

In support of its "attack" on the allegations of the Counterclaim, Dillard notes the obvious requirement that the pleader must identify a contractual promise that was breached and the conduct that constitutes a breach. See Doc. No. 24-1, at pgs. 4-6 of 15. Dillard then proceeds to globally condemn the Counterclaim as a "conclusory pleading" that is purportedly "unsupported by substantive factual allegations" that are "insufficient to properly state a claim upon which relief can be granted." Id. This is all true, Dillard reasons, because the Counterclaim "does not contain the requisite factual content that allows the Court to draw the reasonable inference that Dillard's is somehow liable for the misconduct alleged." Id.

As "authority" for its arguments, Dillard relies principally on *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a case filed by a Pakistani Muslim in the wake of the September 11, 2001 terrorist attacks, accusing various officials at all levels of the federal government of violating his constitutional rights after arresting him on criminal charges related to 9-11. (*Id.* at 666.) At issue in *Iqbal* was whether the plaintiff plead factual matters that, if taken as true, stated a claim that petitioners (including John Ashcroft, the former Attorney General of the United States, and

Robert Mueller, the former Director of the Federal Bureau of Investigation (FBI)) deprived the plaintiff of his clearly established constitutional rights. *Id.* at 666.  Notably, the plaintiff in *Iqbal* actually pleaded guilty to the criminal charges brought against him, served a term of imprisonment and then was removed to his native Pakistan. *Id.* at 668.  He then filed a *Bivens* action against 34 current and former federal officials and 19 "John Doe" correctional officers. *Id.* The defendants named in the pleading ranged from the correctional officers who had day-to-day contact with the plaintiff, to the wardens of a facility he was housed in, all the way to petitioners at issue in Iqbal – officials who were undeniably at the highest level of the federal law enforcement hierarchy. *Ibid.*

As for the petitioners in *Iqbal*, the allegations were that petitioners designated the plaintiff as a person of high interest on account of his race, religion or national origin, in purported contravention of the First and Fifth Amendments to the Constitution, but with no specific reference to their allegedly actionable conduct beyond the assertion that the FBI, under Mueller's direction, "arrested and detained thousands of Arab Muslim men…as part of its investigation of the events of September 11." *Id.* at 668-669.  It also complained generally, but not specifically, that each of the petitioners played some form of undescribed role in implementing policies that resulted in the plaintiff's mistreatment. *Id.*

Based on the foregoing highly obscured factual basis of the petitioners' *particular* involvement in the allegations of the plaintiff's complaint, petitioners moved to dismiss the complaint against them alone for failing to state sufficient allegations to show their specific involvement in clearly established unconstitutional conduct committed by agencies they were alleged to have headed. *Id.* at 669.  Although the District Court denied the motion, finding "it cannot be said that there [is] no set of facts on which [respondent] would be entitled to relief as against" petitioners, petitioners filed an interlocutory appeal with the United States Court of Appeals for the Second Circuit. *Id.*  While that appeal was pending the Supreme Court decided *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2008), which discussed the standard for evaluating whether a complaint is sufficient to survive a motion to dismiss. *Id.*  Thereafter, the Second District, applying *Twombly*, found the plaintiff's allegations adequate to challenge

petitioners' personal involvement in discriminatory decisions which, if true, violated clearly established constitutional law. *Id.* at 670.

In reversing the Court of Appeal, and as to the adequacy of the plaintiff's particular pleading, the Supreme Court began by addressing the specific elements a plaintiff must plead to state a claim of unconstitutional discrimination against officials who are entitled to assert the defense of qualified immunity. *Id.* at 675.  The Court then went on to make clear the limited settings where a *Bivens* actions does apply before emphasizing that government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*; rather, their own specific conduct must be at issue. *Id.* at 676.

As a result, and because vicarious liability is inapplicable in *Bivens* actions and Section 1983 actions, the Court held "a plaintiff must plead that each Government-official defendant, through the officials *own individual actions*, has violated the Constitution." *Id.* [*emphasis* added]. And because such an action required allegations that a decision maker undertook a course of action "because of," not merely "in spite of" the adverse impacts upon an identifiable group, the Court held that "[i]t follows that, to state a claim based on a violation of a clearly established right, respondent must plead sufficient factual matter to show that petitioners adopted and implemented the detention policies at issue not for a neutral, investigative reason but for the purpose of discriminating on account of race, religion, or national origin." (*Id.* at 677.)

In other words, it was because of the specific facts required to be pled, as against the specific petitioners who were raising the challenge in *Iqbal*, that the Court found the plaintiff's pleading deficient; in large part because the plaintiff asserted general allegations against an entire swath of defendants, serving at all levels of the government, but with no specific allegations as to Ashcroft and Mueller.  But, a *Bivens* or other constitutional-based action, laden with the specific factual allegations required to be pled with specificity and to delineate the specific responsibility of high-ranking government officials, has no application, whatsoever, to this action for a garden-variety breach of contract and tortious interference action between, in effect, two parties, and nothing in *Iqbal*, fairly read with reference to the pleading and standards of pleading at issue in

that case and the claims asserted there, suggests anything to the contrary.  In that regard, *Iqbal* is inapposite to this case.

Here, Counterclaimants have identified the contract at issue; it is the very same contract that underlies Dillard's highly contested claims of breach of the same agreement, which Counterclaimants have moved to dismiss; largely on grounds they are time-barred. Counterclaimants have likewise identified within their Counterclaim, the party alleged to have engaged in the conduct that breached the contract; namely, Dillard.  As such, Dillard is not merely one of many actors, left unaware of their specific conduct that is generally alleged to have breached the parties' contract, as was the case in *Iqbal*.  And, in this case, Counterclaimants are not obliged to specifically plead the non-application of an immunity defense.  Rather, in most instances, Counterclaimants specifically allege within the Counterclaim the promises breached and the conduct alleged to breach them, precisely as the law requires.

Dillard acknowledges in its motion the fact the word "consent" is mentioned twenty (20) times in ten (10) different sections of the lease at issue. Doc. No. 24-1, at p. 5 of 15.  Although Dillard feigns confusion over what "consent" the agreement requires Dillard to give (as opposed to those provisions that disclaim the obligation to do so), and how Dillard has breached each provision of the contract, the fact is the Counterclaim is sufficient to put them all at issue; particularly given that the contract identifies the subjects concerning which Dillard's consent is required, and those where it is not.  As such, the Counterclaim and the contract, read together, make clear what consent provisions Dillard breached and the conduct through which the contract was breached.  That is all that is required.

Under New Mexico law, the elements of a breach of contract action are the existence of the contract, breach, causation and damages. *Young v. Hartford Casualty Insurance Company*, 503 F.Supp.3d 1125, 1179 (D.N.M 2020).  Here, Counterclaimants have alleged Dillard's breach of the lease by having:

> …refused to consent to anything concerning which its consent is even *arguably* required (and any requirement for Dillard's consent is arguable at best as to anything because, as set forth above at great length, Dillard is estopped, by its conduct before and after 2007, from now trying to reinstate obsolete Lease terms

that were waived over a decade ago, and which have not been enforced or even enforceable for the past 15 years). The only reason Dillard seeks to impose its "consent" to anything Winrock or Goodman requests at the Center is to further its stated goal of getting "**a new store deal that works for us**," to which Dillard has no lawful entitlement, without which Dillard will continue to breach its express and implied contractual obligations to Winrock under the Lease; assuming the "consent" provisions of the Lease are even still enforceable."

<u>See</u> Doc. No. 22, at p. 11 of 112, at ¶ 30.

The foregoing allegation is sufficient to put at issue *all* obligations on the part of Dillard to consent to anything in the lease that contemplates an obligation to consent, reasonably or otherwise. But it also bears noting the Counterclaim does not merely put at issue *all* consent obligations under the lease. Instead, at Paragraph 33 of the Counterclaim, Counterclaimants alleges Dillard's specific obligation to consent (subject only to its "reasonable discretion," which is obviously required to be reasonable exercised) to the construction of a new building to house Fidelity on the Reserve Tract within the Center, and that Dillard breached its consent obligation by instead withholding its consent *at all* until "**we get a new store deal that works for us.**" <u>Id.</u> at pages 11-12, ¶ 33.) The Counterclaim also specifically alleges that Dillard's failure to consent was unreasonable and thus breached its consent obligations with respect to the new building that would house Fidelity on the Reserve Tract within the Center. <u>Id.</u>

In addition, Paragraph 34 of the Counterclaim specifically alleges that by "unreasonably failing and refusing to consent to construction on the Reserve Tract that undeniably met the requirements of the Lease (specifically, Exhibit H thereof), and instead unreasonably withholding consent for the express purpose of attempting to extort Winrock into gifting it a store that Winrock had no legal obligation to convey – and which Dillard had no legal right to demand – Dillard breached the Lease, causing damages to Winrock, and to its affiliate and property manager, Goodman; an intended third party beneficiary of the Lease given Goodman's role in assisting Winrock in meeting its obligations under the Lease." Doc. No. 22, at p. 22, ¶ 34. This, too, is a very specific allegation of breach of a specific obligation under the Lease that requires Dillard's motion be denied, since the analysis begins and ends with whether the complaint states *a* claim for which relief appears available, and the Counterclaim plainly does.

But there's more.  In addition to alleging Dillard's breach of those provisions of the lease that require its reasonable consent and/or approval, the Counterclaim also alleges Dillard's outright refusal to replace utility lines that Dillard is responsible for under the parties' Lease. See Doc. No. 22, at pgs. 12 and 13, ¶ 35.

The fact is, *either* of Dillard's asserted breaches of the parties' lease – whether founded upon Dillard's refusal to consent or approve matters concerning which its approval or consent is required to be reasonably exercised or to perform other specific obligations found in the parties' lease – is sufficient to sustain the first claim asserted within the Counterclaim.  For that reason, Dillard's motion to dismiss should be denied.

**4.2    The Counterclaim Adequately Pleads the Second Claim for Breach of the Implied Covenant.**

As Dillard acknowledges, the very purpose of the implied covenant of good faith and fair dealing is to protect the reasonable expectations of the parties to a contract arising from its stated terms. See Doc. No. 24-1, at p. 6, citing *Sanders v. FedEx Ground Package Sys., Inc.*, 144 N.M. 449 (2008).  That covenant is breached where, as here, the plaintiff shows "bad faith or that one party wrongfully and intentionally used the contract to the detriment of the other party." *Id.* Indeed, in opposing Counterclaimants' own motion to dismiss Dillard's claim for breach of the implied covenant, Dillard argued to this Court that in "all contracts, New Mexico law imposes upon parties a duty of good faith and fair dealing." See Doc. No. 19, at p. 6 [citing *City of Raton v. Arkansas River Power Auth.*, 611 F.Supp.2d 1190, 1199 (D.N.M. 2008)].  Such a claim is properly asserted, Dillard argued to this Court, whenever a defendant's "conduct violated the parties' 'agreed common purpose' or was inconsistent with the plaintiff's 'justified expectations.'" Id. at p. 7 [citing *Occusafe, Inc. v. EG&G Rocky Flats, Inc.*, 54 F.3d 618, 624 (10th Cir. 1995)].

One could hardly lend a more apt description of the second claim for relief within the Counterclaim, which expressly asserts that Dillard withheld its consent, in bad faith and in breach of its obligations under the parties' Lease, specifically to deprive Counterclaimants of the benefits of the parties' agreement; all in the name of an outright land grab Dillard had no legal

entitlement to demand.  It did so only after incorporating all of Dillard's asserted breaches before asserting that Dillard engaged in this misconduct to "undermine and interfere with Counterclaimants' right to receive the benefits of the lease and the obligations set forth in the lease, including Dillard's duty to reasonably cooperate and consent to various development activities." See Doc. No. 22, at p. 14, ¶ 41.

The foregoing is the very essence of the implied covenant of good faith and fair dealing and Dillard plainly breached it through the many specific allegations of its asserted bad faith misconduct in engaging the actions alleged within that claim for relief for the express purpose of depriving Counterclaimants of the benefits of the lease.  As such, the Counterclaim amply alleges Counterclaimants' entitlement to relief under the implied covenant and the claim is clearly plausible on its face.

Dillard's citation to the contractual consents it asserts it is entitled to withhold in is "sole and absolute discretion" do not alter its stated obligation to "approve or disapprove, ***in its reasonable* discretion**," which invokes common notions of "reasonableness" and do not permit Dillard to act arbitrarily or capriciously, much less in furtherance of its own stated goal of obtaining a "store deal that works for us," but to which it has and had no legal entitlement.  As such, this aspect of Dillard's motion must be denied as well.

### 4.3    Counterclaimants' Tortious Interference With Existing Contracts Claim is Adequately Pled.

In response to Dillard's challenge to Counterclaimants' third claim for relief, it suffices to simply reiterate the elements of the claim set forth in Dillard's motion and then recite the material allegations of the Counterclaim.  As Dillard concedes, the elements of this claim require the plaintiff to plead that: (1) the defendant had knowledge of the contract, (2) the plaintiff was unable to fulfill the contract's obligations, (3) the defendant played an active and substantial part in causing the plaintiff to lose the benefits of the contract, (4) the plaintiff suffered damages resulting from the breach, and (5) the defendant induced the breach without justification or privilege to do so. See Doc. 24-1, at p. 10 of 15 [citing *LensCrafters, Inc. v. Kehoe*, 2012-NMSC-020, 282 P.3d 758, 767 (2012)].

Each of these elements is plainly satisfied within paragraphs 44 and 45 of the

Counterclaim, which allege:

> 44.     Winrock and Goodman are and were party to existing contractual
> relationships with third parties, including commercial tenants with whom
> Winrock had executed leases and other contracts, of which Dillard was aware.
> Because of Dillard's active interference with Winrock and Goodman's ability to
> perform its contracts with these third parties – with full knowledge that its
> interference would lead to a breach of these agreements – the contracts between
> Winrock and Goodman and these third parties were breached.  Dillard played an
> active and substantial role in causing Winrock and Goodman to lose the benefit of
> the contracts to which both were a party, including substantial revenue streams
> that Winrock and Goodman would otherwise have enjoyed as a result of those
> contracts.
> 45.     In addition to the foregoing, Dillard caused Winrock to lose the benefit of
> finance agreements to which it was a party by unreasonably and unlawfully
> withholding its consent to matters concerning which Dillard had no reasonable
> grounds for withholding its consent, which caused Winrock to have to terminate
> existing, more favorable lending agreements and replacing them with higher-
> interest lending agreements; all because of Dillard's unlawful conduct in seeking
> to extort Winrock unless Winrock deeded real property to Dillard, free of charge.
> Thus, as a direct result of Dillard's conduct, Winrock was deprived of the value of
> multiple contracts to which it was a party, all because of Dillard's unlawful
> conduct, in breach of the parties' Lease.

Although Dillard suggests, without analysis or explanation, that the absence of

"justification or privilege" is required to be affirmatively alleged within the Counterclaim,[1] it

cites no authority for that proposition within a motion to dismiss.  Again, at the motion-to-

dismiss stage, the court does not weigh the evidence, and instead is interested only in whether it

has jurisdiction and whether the plaintiff pleads a claim to relief that is plausible on its face.

*Rivero, supra*, 2019 WL at *47 [quoting *Begay v. Pub. Serv. Co. of N.M.*, 710 F. Supp. 2d 1161,

1199 (D.N.M. 2010)].  Here, the Counterclaim adequately alleges each of the foregoing

elements, and it also more than adequately alleges Dillard's knowing and wrongful efforts to

actively interfere with the contracts alleged.  As such, Dillard's motion to dismiss this claim

must be denied as well.

---

[1]     In fact, and other than in cases involving an immunity defense, affirmative defenses must
generally be pled in the defendant's answer, not argued in a motion to dismiss. *Front Row
Technologies, LLC v. NBA Media Ventures, LLC*, 163 F.Supp.3d 938, 975 (D.N.M. 2016).

**4.4     Counterclaimants' Tortious Interference With Prospective Contracts
Claim is Likewise Adequately Pled.**

Counterclaimants' fourth claim for relief survives for the same reason its third claim
does.  Here again, Counterclaimants expressly assert each of the elements required to be asserted
and do so with specific reference to Dillard's wrongful intent; the only material difference being
that this claim addresses *prospective* contractual relationships with which Dillard interfered,
which is likewise actionable under New Mexico law.  A defendant tortiously interferes with
prospective contractual relations if the defendant "intentionally and improperly interferes with
another's prospective contractual relation ... to the other for the pecuniary harm resulting from
loss of the benefits of the relation...." *M&M Rental Tools, Inc. v. Milchem, Inc.*, 94 N.M. 449,
612 P.2d 241, 245 (Ct. App. 1980).  Actionable interference may consist of "(a) inducing or
otherwise causing a third person not to enter into or continue the prospective relation *or* (b)
preventing the other from acquiring or continuing the prospective relation." *Id.*  No matter how
interference occurs, a plaintiff must allege that the defendant acted either with an improper
motive solely to harm the plaintiff, or an improper means to interfere with the contractual
relations. *Id.* at 246.

Here again, the Counterclaim adequately alleges each of the requisite elements.  It does
so through the following allegations, found within Paragraph 50 of the Counterclaim, each of
which satisfies the foregoing legal requirements, with ***emphasis*** added for Dillard's benefit:

> 50.     With full knowledge of the prospective contractual relationships in
> which Winrock and Goodman held an interest, ***Dillard wrongfully and
> intentionally prevented Winrock and Goodman from realizing the benefits of
> those contracts***, through and including by wrongfully and unreasonably
> withholding its "consent" to such agreements not because Dillard had any
> commercially reasonable grounds for objecting to those contracts, but because
> Dillard actively sought to extort Winrock into conveying fee title to real property
> within the Center by withholding its consent to any requests by Winrock unless
> and until Winrock capitulated and agreed to a "new store deal that works for us."
> ***By engaging in such conduct, Dillard intentionally and improperly interfered
> with Winrock and Goodman's prospective contractual relations with others and
> did so both with improper motives and through improper means***. As a result, and
> in addition to such actual damages as Winrock and Goodman shall be entitled to

recover, both seek punitive damages in a sum sufficient to punish Dillard for its
unlawful conduct and to deter others from engaging in similar misconduct.
Doc. 22, at p. 16, ¶ 50.

Because the foregoing allegations meet precisely the elements required under New
Mexico law, and adequately apprise Dillard of the legal basis of its liability for interfering with
prospective contracts Counterclaimants would have assertedly obtained absent Dillard's
misconduct,[2] Dillard's motion to dismiss this claim must be denied as well.

### 4.5    Enforceability of the Exculpatory Clauses Cited by Dillard is a Question of Fact.

Dillard next contends a punitive damage exculpatory clause within the parties' lease bars
Counterclaimants from recovering punitive damages, even as to its tort claims.  However,
exculpatory clauses in contracts are not a favorite of the law.  Instead, they are always strictly
construed against the promisee and will not be enforced if the promisee enjoys a bargaining
power superior to the promisor, as where the promisor is required to deal with the promisee on
his own terms. *Tyler v. Dowell, Inc.*, 274 F.2d 890, 895 (10th Cir. 1960) [citing *Mohawk Drilling
Co. v. McCullough Tool Co.*, 271 F.2d 627 (10th Cir. 1959)].

Here, the Counterclaim makes clear Counterclaimants had no "bargaining control" at all
with Dillard; Winrock merely inherited the lease along with the property they purchased from
Dillard's prior lessor,[3] and along with it, Dillard's rampant efforts to extort from
Counterclaimants benefits to which Dillard holds no legal entitlement; most prominently the
"store deal that works for us," but to which Dillard has no legal right.   Moreover, and strictly
construing the language of the exculpatory clause upon which Dillard relies (as the Court is
required to under governing law), it plainly only applies, if at all, to any claim for damages "in

---

[2]    <u>See</u> Doc. No. 22, at page 16, ¶ 51 ["Dillard's foregoing misconduct caused actual
damages to Winrock and Goodman, through the loss of more favorable terms under prospective
contracts to **which Winrock and Goodman would have been party**, and the loss of income
streams **both would have received but for Dillard's unlawful and improper interference with
the prospective contractual relationships Winrock and Goodman stood to gain**, and **would
have gained but for Dillard's tortious conduct**."] [*emphasis* added].

[3]    <u>See</u> Doc. 22, page 4, ¶ 10.

the event of a default by Tenant." See Doc. # 18-1, Page 48, § 15.03(iii).  It does not and cannot apply to Counterclaimants' tort claims.

In addition to the foregoing, it bears noting that in spite of the general bar on punitive damages for breach-of-contract cases, "the Supreme Court of New Mexico has recognized that punitive damages may be recoverable under some circumstances for a breach of contract." *Anderson Living Trust v. ConocoPhillips Co., LLC*, 952 F.Supp.2d 979, 1030-31 (D.N.M  2013). As the New Mexico Supreme Court stated in *Romero v. Mervyn's*, 109 N.M. 249, 784 P.2d 992, 998 (1994): "Our previous cases clearly establish that, in contract cases not involving insurance, punitive damages may be recovered for breach of contract when the defendant's conduct was malicious, fraudulent, oppressive, or committed recklessly with a wanton disregard for the plaintiff's rights."  The New Mexico Supreme Court has defined "reckless disregard" as sufficient for an award of punitive damages, such as "when the defendant knows of potential harm to the interests of the plaintiff but nonetheless utterly fails to exercise care to avoid the harm." *Paiz*, *supra*, 880 P.2d at 308.

Here, the Counterclaim adequately alleges Counterclaimants' entitlement to punitive damages, and expressly does so only with respect to the tort claims, not the contract claims. See, e.g., Doc. No. 22 at p. 15, ¶ 47, p. 16, ¶ 50.  As such, Dillard's attack on Counterclaimants' entitlement to punitive damages fails under both the express limiting language of the lease and New Mexico law.  As a result, its motion to dismiss this element of the Counterclaim must be dismissed as well.

### 4.6    Counterclaimants' Claim for Treble Damages is Permitted for the Same Reason its Punitive Damage Claims Are Permitted.

Dillard correctly notes the New Mexico Supreme Court has concluded treble damages constitute a form of punitive damages. See Dillard's Mtn., at p. 13.  However, this form of "punitive damages" is permitted for the same reason that Counterclaimants' underlying claim for such damages are permitted; specifically, the claim is limited to their tort claims, to which the cited exculpatory provision within the lease simply does not apply for the reasons set forth in Section 4.5 *infra*.  Here again it bears noting the Counterclaim only seeks punitive damages in

connection with Counterclaimant's tort claims, not the contract claims at issue in its first two claims for relief.

**5.      CONCLUSION**

For all the foregoing reasons, Dillard's 12(b)(6) motion to dismiss the Counterclaim should be denied in its entirety.  In the unlikely event the Court concludes any claim for relief or request for damages fails for the reasons set forth in Dillard's motion, Counterclaimants request the Court grant the motions subject to leave to replead to assert the additional facts they can readily add to overcome each and all of Dillard's asserted challenges.


Dated:  November 14, 2023                                  Respectfully submitted,


                                                                         *s/s Michael W. Vivoli*
                                                                         Michael W. Vivoli
                                                                         VIVOLI SACCUZZO, LLP
                                                                         3104 Fourth Avenue
                                                                         San Diego, CA  92103
                                                                         Email: mvivoli@vivolilaw.com
                                                                         Telephone: (619) 744-9992
                                                                         Facsimile:  (619) 744-9994
                                                                         Attorney for Defendants,
                                                                         Winrock Partners LLC and Integrated
                                                                         Property Services Company d/b/a Goodman
                                                                         Realty Group

                                                                         WALKER & ASSOCIATES, P.C.
                                                                         By: /s/ filed electronically
                                                                         Thomas D. Walker
                                                                         Chris W. Pierce
                                                                         500 Marquette N.W., Suite 650
                                                                         Albuquerque, New Mexico 87102
                                                                         (505) 766-9272
                                                                         (505) 766-9287 (fax)
                                                                         twalker@walkerlawpc.com
                                                                         cpierce@walkerlawpc.com

                                                                         *Local Counsel for Defendants Winrock*
                                                                         *Partners, LLC and Integrated Property*
                                                                         *Services Company d/b/a Goodman Realty*
                                                                         *Group*

**Certificate of Service**

I, Chris W. Pierce, hereby certify that on November 14, 2023, a true copy of the foregoing was served via the Court's CM/ECF notification facilities to those parties who are registered CM/ECF participants in this case.

*/s/ Chris W. Pierce*
Chris W. Pierce