IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


**DILLARD STORE SERVICES, INC.,**

      **Plaintiff,**

      **vs.**                               **Civ. No. 22-cv-00921  DHU/JFR**

**WINROCK PARTNERS LLC,
and INTEGRATED PROPERTY
SERVICESCOMPANY d/b/a
GOODMAN REALTY GROUP,**

      **Defendants.**


ORDER GRANTING
PLAINTIFF'S MOTION TO COMPEL PRODUCTION
OF RESPONSIVE DOCUMENTS FROM DEFENDANTS (DOC. 128)

Before the Court is *Dillard's Motion to Compel Production of Responsive Documents from Defendants* ("Motion").  Doc. 128.  In its Motion, Plaintiff Dillard Store Services LLC ("Dillard") seeks supplementation by Defendants to its requests for production that seek (1) all internal communications from 2022 to the present regarding the redevelopment and design of the Shopping Center; and (2) all documents and communications relating to any permits, licenses, approvals, or governmental authorizations sought, applied for, or obtained regarding Roads E and A.  Doc. 128 at 1.  Defendants have filed their response in opposition, to which Dillard replied.  Docs. 136; 140.  Having carefully considered the Motion, response and reply, the Court determines that Plaintiff's Motion should be **GRANTED**.

BACKGROUND AND NATURE OF THE DISPUTE

In June 2025, Plaintiff served its Second Amended Complaint and Request for Permanent Injunctive Relief (SAC), setting forth three claims against Defendants:

1

Count I:        Breach of Contract against Winrock
Count II:       Breach of Implied Covenant of Good Faith and Fair Dealing Against
                Winrock
Count III:      Permanent Injunction Against Winrock and Goodman

*See* Doc. 81.  Generally, the SAC alleges that Defendants breached their lease agreement and

duty of good faith and fair dealing by engaging in demolition and/or construction of the shopping

center without first receiving Dillard's prior approval.  Plaintiff points to a 1992 Lease

Agreement (attached as Exhibit A to the SAC) that "detailed Dillard's expectations that (i) the

Landlord operate, maintain and lease the shopping center in a first-class manner for retail

purposes; and (ii) the configuration of the mall and surrounding parking and other areas to

remain unchanged unless Dillard specifically gave its consent to proposed changes."  Doc. 81 at

⁋ 15.  Regarding the latter expectation, Plaintiff cites Section 16.02 of the 1992 Lease, which

states in substantive part:

> Notwithstanding the foregoing or anything contrary in this Lease: (a) Landlord shall
> make no changes to the Common Area within Tenant's Parking Parcels without
> Tenant's written consent, which Tenant may give or withhold in its sole discretion;
> (b) Landlord may make modifications to the Common Area outside of Tenant's
> Parking Parcel so long as such modifications do not adversely affect traffic
> circulation or otherwise adversely affect Tenant; (c) Landlord shall have the right
> at any time to demolish all or part of the Ward's TBA or to reconfigure the Ward's
> TBA provided that such reconfiguration is within the permissible building area
> shown therefor on Exhibit B and that the Floor Area of the Ward's TBA is not
> increased; and (d) Landlord shall have the right to remove and/or replace Reserve
> Tract occupants provided that Landlord revises Exhibit B to reflect such change
> and enter into an amendment with Tenant substituting such revised Exhibit B for
> the then existing Exhibit B to this Lease.

Doc. 81 at 5-6, citing Ex. A § 16.02.  Plaintiff notes that the Lease also had other restrictions

relating to changes to the site's configuration, and to make any such changes, the Lease required

that Landlord seek Dillard's consent, and that Dillard provide its approval.  Doc. 81, Ex. A, §§

10.01-10.02, 14.07(b), 16.02(iv), 16.03; Ex. G to Ex. A at § I(a).  These "Approval Rights" were

maintained and recognized in subsequent amendments to the Lease, including the 2011 First

2

Amendment.  *See id.* at ¶¶ 18-21 ("The First Amendment also again emphasized Dillard's approval rights…").

**DISCOVERY AT ISSUE**

Contemporaneous to filing its SAC, Plaintiff served its First Set of Requests for Production (RFP) and sought to discover from Defendants documents regarding construction that has occurred, and is occurring, at the Shopping Center.  Doc. 128 at 2.  Specifically, Plaintiff served RFP Nos. 2-3, 13-16, 20, 24, 28, 50, and 53, which seek internal communications from 2022 to the present regarding the redevelopment and design of the Shopping Center; and Request for Production No. 21, which seeks all documents and communications relating to any permits, licenses, approvals, or governmental authorizations sought, applied for, or obtained regarding Roads E and A.  *See* Doc. 128-1 (Plaintiff's First Requests for Production to Defendants Goodman); Doc. 128-2 (Plaintiff's First Requests for Production to Defendant Winrock).[1] [2] [3]

---

[1] The Court notes that Plaintiff's original discovery requests don't contain a time limitation (*see* Doc. 128-1, 128-2), which prompted the Court at the informal discovery dispute conference to suggest Plaintiff temporally narrow its requests.  Accordingly, notwithstanding the allegations in the SAC which allege violations of the Lease Agreement dating to at least 2009 up to the present (with specific violations allegedly occurring in 2016 and 2019), Plaintiff now seeks responsive documents only from 2022 to the present.  The Court recognizes that documents from these earlier dates may be relevant to Plaintiff's discovery needs, but because the instant motion seeks responsive documents from 2022 to the present, the Court limits the relief fashioned to conform to Plaintiff's present requests.

[2] Notably, Plaintiff does not include a time limitation (2022 to present) to RFP 21.

[3] The RFPs at issue are the following:

| | |
|---|---|
| RFP 2: | documents and communications regarding redevelopment of Shopping Center; |
| RFP 3: | documents and communications regarding redesign of Shopping Center; |
| RFP 13, 14, 15: | documents and communications related to redevelopment, construction, site plan changes, maintenance, and parking conditions; |
| RFP 16: | photographs, videos, recordings, related to Shopping Center including those depicting construction, etc. |
| RFP 20: | documents and communications regarding site plans, maps, and architectural drawings before and after redevelopment; |
| RFP 21: | documents and communications relating to permits, licenses, approvals, or governmental authorizations sought, in connection with any construction activity at Shopping Center; |
| RFP 24: | documents and communications relating to decision to transition the Enclosed Mall to an open-air Shopping Center; |

By conducting separate third-party discovery, Plaintiff subsequently concluded that Defendants returned "wholly deficient productions" by producing only a "handful" of internal communications, and have refused to produce "key documents and communications". *Id.* at 2-3; *see also* Doc. 140 at 3 ("Only through extensive third-party discovery was Dillard able to learn just how many documents Defendants are withholding.").

After meeting and conferring with defense counsel over its production requests, and after serving a second set of discovery requests, Plaintiff sought an informal discovery dispute conference with the Court, which was conducted on January 29, 2026. *See* Doc. 125 (Clerk's Minutes). At that conference, and after considering the parties' joint statement and argument of counsel, the Court broadcast that it would likely grant Plaintiff's requests for production, albeit with some narrowing. *Id.* The Court gave Defendants seven days to produce the requested materials or, failing production, gave Plaintiff 14 days to file its motion to compel.

Notwithstanding the informal conference and the Court's pronouncement, Plaintiff claims Defendants still refuse to adequately supplement. Plaintiff claims the requested documents are "all directly tied to and impacting Dillard's consent rights." *Id.* at 3. Plaintiff claims it knows additional material exists and has not been produced based on third-party discovery, as well as on the testimony of defense witnesses at an injunction hearing conducted by the district judge on February 11-12, 2026.[4] *Id.* at 4. Defendants respond that the materials sought by Plaintiff are

---

RFP 28:     documents and communications related to condition, maintenance of, and services provided to common areas of Shopping Center, before and after redevelopment.
RFP 50:     communications relating to access, parking or store operations for the Dillard Stores;
RFP 53:     communications between Goodman and Winrock concerning constructions or reconfiguration.

[4] The Court has not reviewed a transcript of the injunction hearing held before Judge Urias on February 11-12, 2026, but has reviewed excerpts from said hearing that are attached to defense counsel's Declaration. *See* Doc. 137.

4

not relevant and not proportional to their claims.  Doc. 136 at 1.  Defendants note that they have

already produced over 20,000 documents and claim that Plaintiff has received more than they are

entitled to; Defendants state that Plaintiff has failed to explain why the additional documents are

proportional to the needs of its case.  *Id.* at 3.  Defendants also claim that Plaintiff's Motion is

untimely.  *Id.* at 10.  In reply, Plaintiff argues that its Motion is timely, and that Defendants'

proportionality argument is undeveloped and lacks merit.  Doc. 140.  Plaintiff notes that

Defendants complain of lack of proportionality, but offer "no cognizable legal argument as to

why."  *Id.* at 5.

**LAW ON DISCOVERY AND SUPPLEMENTATION**

The federal rules permit parties to discover "any nonprivileged matter that is relevant to

any party's claim or defense and proportional to the needs of the case . . . ."  Fed. R. Civ. P.

26(b)(1).  The factors that bear upon proportionality are: "the importance of the issues at stake in

the action, the amount in controversy, the parties' relative access to relevant information, the

parties' resources, the importance of the discovery in resolving the issues, and whether the

burden or expense of the proposed discovery outweighs its likely benefit."  *Id*.  The scope of

discovery under Rule 26 is broad.  *See Gomez v. Martin Marietta Corp*., 50 F.3d 1511, 1520 (10th

Cir. 1995) ("the scope of discovery under the federal rules is broad").

Relevancy is a guiding consideration in discovery and should be " 'construed broadly to

encompass any matter that bears on, or that reasonably could lead to other matter that could bear

on' any party's claim or defense."  *See State Farm Mutual Auto. Ins. Co. v. Fayda*, No. 14-9792,

2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015) (Francis IV, M.J.) (quoting *Oppenheimer*

*Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).  A party resisting discovery must establish a

---

(Declaration Of Michael W. Vivoli & Attached Exhibits In Support Of Defendant's Opposition To Plaintiff's Motion To Compel Further Responses To Its Document Demands).

lack of relevance by demonstrating that the requested discovery falls beyond Rule 26's scope of relevance; conversely, when the request is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request. *See Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 653 (D. Kan. 2006). A court must strive to eliminate unnecessary and wasteful discovery and identify a party's actual need for the sought information. "[B]road discovery is not without limits[,] and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." *Gomez*, 50 F.3d at 1520 (internal quotation marks omitted).

Regarding a party's duty to supplement, Rule 26(e) states:

> (1)     In General.   A party who has made a disclosure under Rule 26(a)— or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:

>> (A)  in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing;

Fed. R. Civ. P. 26(e). Thus, if it becomes known to a party that "in some material respect" a prior response to an interrogatory "is incomplete or incorrect," that party must supplement or correct its disclosure. Pursuant to Local Rule 26.6, a party served with an objection to a request for production "must proceed under D.N.M.LR-Civ. 37.1 within twenty-one (21) days of service of an objection.... Failure to proceed within this time period constitutes acceptance of the objection." D.N.M.LR-Civ. 26.6. Federal Rule 37 authorizes a court to order a party to answer an interrogatory. *See* Fed. R. Civ. P. 37(a)(3)(B)(iii). Failure to do so may result in sanctions, depending on whether the other party suffered prejudice and, if so, whether such prejudice was curable, whether court proceedings were disrupted, and whether there is evidence of bad faith.

6

*See New Mexico ex rel. Balderas v. Real Estate Law Center, P.C.*, 409 F.Supp.3d 1122, 1146 (D.N.M. 2019).

**ANALYSIS**

A.  <u>Whether the Instant Motion Is Timely</u>

First, the Court must address whether the instant Motion was timely filed.  Defendants argue that it was not filed within 21 days of Plaintiff first learning of a deficiency, given that Defendants' responses to Plaintiff's discovery requests were served in August 2025.  *See* Doc. 137 at ¶ 6 (Declaration of Michael W. Vivoli).  Further, Defendants argue they have not waived their right to claim that Plaintiff failed to comply with Local Rule 26.6's 21-day deadline to assert a deficiency in discovery.  *Id.; see also* Doc. 125 (Clerk's Minutes).  Plaintiff answers that it first learned that there must be additional documents that were not produced through third-party discovery.  Doc. 128 at 3.  Upon learning this information, on December 23, 2025, Plaintiff served a Second Set of Written Discovery on Defendant Goodman, and then sent a letter to defense counsel seeking supplementation on December 31, 2025.  *See* Doc. 128 at 3, citing Ex. 8.  Then, based on Defendants' objections to these supplemental discovery requests, Plaintiff timely sought the Court's intervention through its informal dispute process, which occurred on January 29, 2026.  At the informal despite conference, the Court ruled that Plaintiff would have fourteen days to file its motion to compel if Defendants failed to supplement.  Fourteen days from January 29, 2026, is February 12, 2026, the very day Plaintiff filed the instant Motion.  On this record, the Court concludes the Motion is timely.

B.    Whether the Material Sought is Material, Relevant, and Proportional

Next, through its Requests for Production (RFP),[5] Plaintiff seeks two categories of documents.  RFPs 2-3, 13-16, 20, 24, 28, 50 and 53 seek internal communications responsive to Plaintiff's discovery requests, not merely those pertaining to Roads E and A but to earlier claimed breaches, including the construction of Winrock Park, construction of Road D, the liner shops/food hall, a waterfront restaurant, a hotel, and the closure of the southern road for a water reuse project.  Doc. 128 at 5.  Plaintiff now temporally limits these requests to 2022 to the present, and seeks information on changes made at the shopping center to demonstrate that Defendants have failed to comply with Plaintiff's approval rights; Plaintiff argues these documents will detail the impacts of those changes on Plaintiff's retail business and the associated construction disruption.

RFP 21 reflects the second category, which are documents and communications related to permits, licenses, approvals or authorizations regarding "any construction, demolition, renovation, or redevelopment activities as the Shopping Center."  Doc. 128 at 6, citing Doc. 128-1 at 11.  Plaintiff claims these documents "are critical to establishing the timeline and scope of Defendants' construction activities and whether Defendants sought approval from authorities while deliberately bypassing Dillard's consent rights."  Doc. 128 at 6; *see also* Doc. 141 ("These requests are critical to Dillard's claims in this case and are not accessible to Dillard unless Defendants produced them.").

---

[5] Plaintiff attached to its motion copies of its First RFPs that it served on both Defendant Winrock Partners LLC and Defendant Goodman Realty Group, *see* Docs. 128-1, 128-2, as well as the responses served by the respective Defendants.  *See* Docs. 128-3, and 128-4.  Plaintiff also attached Defendant Goodman's responses to its Second RFPs. *See* Doc. 128-10.  The First RFPs are identical as to each Defendant.

In their discovery responses, Defendants generally object to these RFPs as overbroad, vague, ambiguous, unduly burdensome, not proportional to the needs of the case, and invading work-product and attorney-client, but then "without waiving" these objections, agree to produce "all relevant, non-privileged documents believed to be responsive to the requests and that are proportional to the needs of this litigation." *See, e.g.,* Doc. 128-3 (Response to Request for Production No. 3).

Plaintiff argues the documents it seeks are especially relevant given questioning at the injunction hearing before Judge Urias regarding the construction of Road A, and suggests that additional, unproduced documents likely exist based on defense counsel's questioning of Plaintiff's expert witness regarding the timeline of future construction. Doc. 128 at 7 (defense counsel's cross-examination "leaves no question that additional responsive documents exist…"). Defendants respond that Plaintiff has failed to demonstrate that its discovery requests are proportional to its needs, "but has all but admitted it filed [the lawsuit] purely to coerce an interest in real property that it lacks a valid legal basis for seeking." Doc. 136 at 3. Indeed, Defendants' response in opposition tends to focus more on this theory rather than establish *how* the document requests seek material that is not relevant or not proportional to the needs of the case. *See e.g.* Doc. 136 at 7-9 (arguing the alleged "True Aim" of the lawsuit); *id.* at 12 ("the true aim of Dillard's motion and the lawsuit underlying it is to exert improper leverage over the Defendants.").

Defendants vaguely raise an estoppel defense,[6] suggesting that Plaintiff consented to the changes that took place at the Shopping Center. But Defendants fail to develop this argument, and regardless the Court notes Rule 26 requires a party to disclose information in its initial

---

[6] *See* Doc. 136 at 4 (describing Dillard's active support for redevelopment at Winrock).

disclosures "that the disclosing party may use to support its claims *or defenses*.".  Fed. R. Civ. P. 26(a)(1)(A)(i) (emphasis added).  If Defendants plan to rely on an estoppel theory of defense, they must disclose information that supports that defense.  Further, pointing to the voluminous nature of discovery already produced, *see* Doc. 136 at 11, does not shield Defendants from their obligation to produce additional responsive documents, as long as the additional documents are relevant to Plaintiff's claims or defenses and proportional to the needs of its case.  Fed. R. Civ. P. 26(b).  If additional responsive documents exist, Defendants should produce them; if none exist and everything has been discovered, then Defendants should so indicate.

Plaintiff's SAC alleges that Defendants failed to abide by the lease's approval provisions, *see* Doc. 81, and Plaintiff's requests for production focus on obtaining information that would further that claim.  Defendants' objections based on relevance, overbreadth and proportionality fail to persuade this Court that Plaintiff is overreaching in its requests.  "Relevance is still to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense." *State Farm Mutual Auto. Ins. Co. v. Fayda*, 2015 WL 7871037, at *2 (S.DN.Y. 2015) (internal quotation marks omitted) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).  There may be relevant evidence in documents and communications regarding the redevelopment and redesign of Shopping Center, or in documents and communications relating to the various permits, licenses, approvals, or governmental authorizations that were sought, obtained or perhaps denied in connection with construction activity at Shopping Center.  The transition of Winrock Shopping Center from an enclosed mall to an outdoor facility impacts Plaintiff, and given its central claim that its approval rights were not and are not being respected, Plaintiff's effort to seek information on this claim

10

are appropriate.  The Court concludes that the information sought by Plaintiff is material and

relevant and proportional to its claims.

IT IS ORDERED that *Plaintiff's Motion to Compel Production of Responsive*

*Documents from Defendants* (Doc. 128) is **GRANTED**.  Within ten (10) days, Defendants must

produce:

(1)   all internal communications from 2022 to the present responsive to Plaintiff's discovery requests (RFP Nos. 2, 3, 13-16, 20, 24, 28, 50 and 53) regarding the redevelopment and design of the Shopping Center; and

(2)   all documents and communications relating to any permits, licenses, approvals, or governmental authorizations sought, applied for, or obtained regarding Roads E and A (RFP No. 21).

**IT IS SO ORDERED.**

HON. JOHN F. ROBBENHAAR
United States Magistrate Judge

11